IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MARTHA L. GUETZLOFF, | )<br>)<br>) |
| Plaintiff, | )<br>) Case No. 2:20-cv-04177-NKL |
| v. | )<br>) |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br>Defendants. | )<br>)<br>)<br>)<br>) |

**ORDER**

Plaintiff Martha Guetzloff seeks review of the denial by the Commissioner of the Social Security Administration (the "Commissioner") of her application for supplemental security income ("SSI") under 42 U.S.C §§ 1381–1385. Ms. Guetzloff argues reversal is required both because the ALJ improperly evaluated the intensity, persistence, and limiting effects of her symptoms and because the ALJ improperly weighed the medical opinion evidence when evaluating her residual functional capacity ("RFC"). As discussed in more detail below, the ALJ's decision is AFFIRMED.

**I.      Background**

On September 25, 2018, Ms. Guetzloff protectively filed her SSI application, claiming an alleged onset date of September 25, 2018.[1] *See* Tr. 10. The claim was initially denied, and Ms. Guetzloff requested a hearing before an administrative law judge. On July 25, 2019,

---

[1] Ms. Guetzloff initially claimed an onset date of July 1, 2005. However, the onset date was subsequently amended to September 25, 2018. *See* Tr. 10.

Administrative Law Judge Vicky Ruth (the "ALJ") held a video hearing on Ms. Guetzloff's claims, after which she ultimately concluded that Ms. Guetzloff was not disabled. Tr. 25.

Applying the five-step process defined in 20 C.F.R. § 404.1520(a), the ALJ concluded that Ms. Guetzloff had several severe impairments: post-traumatic stress disorder ("PTSD"); major depressive disorder; bipolar disorder; obesity; diabetes mellitus; fibromyalgia; and spinal stenosis. *See* Tr. 13. However, none of these impairments—individually or cumulatively—were found to meet or equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ then found Ms. Guetzloff had the RFC to perform light work with several additional limitations. Specifically, Ms. Guetzloff could never climb ladders, ropes, or scaffolds. Tr. 16. She could only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. Tr. 16. The ALJ further found that Ms. Guetzloff should avoid concentrated exposure to excessive vibration and workplace hazards, but could perform simple routine tasks with no fast-paced production work. Tr. 16. Ms. Guetzloff could have no interaction with the public, and only occasional interaction with coworkers and supervisors. Tr. 16.

The ALJ then determined that, considering Ms. Guetzloff's age, education, work experience, and RFC, she could perform work that existed in significant numbers in the national economy. Tr. 24. Based upon the testimony of a vocational expert, the ALJ specifically concluded that Ms. Guetzloff could work as a Router, Mail Clerk, or Laundry Worker. Tr. 25. Because Ms. Guetzloff could perform work that was available in significant numbers in the national economy, she was deemed not disabled. Tr. 25.

Ms. Guetzloff appealed the ALJ's decision to the Appeals Council on July 14, 2020, which ultimately affirmed the ALJ's decision. Accordingly, the ALJ's decision is a final decision of the Commissioner and is ripe for judicial review.

**II.     Legal Standard**

The Court must affirm the Commissioner's denial of social security benefits so long as "there was no legal error" and "the findings of fact are supported by substantial evidence on the record as a whole." *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (internal citation omitted). "'Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion.'" *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)). The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence [also] exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

**III.    Discussion**

Ms. Guetzloff claims that the ALJ erred in evaluating her RFC. Specifically, Ms. Guetzloff argues that the ALJ improperly discounted her testimony regarding the intensity, persistence, and limiting effects of her symptoms (her "subjective complaints"). She also argues that the ALJ inappropriately relied on the medical opinion evidence from State Agency psychological consultant Dr. Robert Cottone and improperly discounted opinions from one of

Ms. Guetzloff's mental health providers, Nurse Practitioner ("NP") Vivian Kamara.[2] The Court will address each argument in turn.

### A. RFC Generally

A claimant's RFC is "what [she] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001) (citation omitted). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d at 860, 863 (8th Cir. 2000)); *see also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

"To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments." *Morton v. Saul*, No. 2:19-CV-92, 2021 WL 307552, at *4 (E.D. Mo. Jan. 29, 2021) (citing *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995)). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations

---

[2] While Ms. Guetzloff mentions the ALJ's decision to discount psychologist Dr. Ann Pollock's opinion that Ms. Guetzloff's "combination of mental and physical issues prevents her from working at this time," Tr. 23, 392, she does not argue that this decision was invalid. For the avoidance of doubt, the ALJ was within her power to find such an opinion unpersuasive, given that it infringes on issues reserved to the Commissioner. *See* 30 C.F.R. § 416.920b(c)(3); *see also Krogmeier v. Barnhart*, 294 F.3d 1019, 1023 (8th Cir. 2002) ("[T]reating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant cannot be gainfully employed, because they are merely "opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner])." (citation omitted).

4
Case 2:20-cv-04177-NKL   Document 27   Filed 11/05/21   Page 4 of 19

omitted). "[S]ome medical evidence must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Lauer*, 245 F.3d at 704 (internal citations omitted). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id.*; *see also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.").

### B. Whether the ALJ Erred in Evaluating the Intensity, Persistence, and Limiting Effect of Ms. Guetzloff's Symptoms.

Ms. Guetzloff argues the ALJ improperly discounted her subjective complaints regarding the intensity, persistence, and limiting effects of her psychological symptoms. When an ALJ evaluates subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and 20 C.F.R. § 404.1529(c)). However, the ALJ is not required to discuss each of these factors. *Id.* (citation omitted).[3] Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent

---

[3] Ms. Guetzloff appears to point to general deficiencies in the ALJ's opinion writing technique, specifically taking aim at the general and conclusory language at times deployed. While additional detail and explanation from the ALJ would certainly have been welcome, the Court cannot conclude that this was reversible error. The ALJ's analysis here provides "an adequate basis for meaningful judicial review" and is supported by substantial evidence. *See Mills*, 2015 WL 5785691at *8 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2nd Cir. 2013) (holding that the ALJ's failure to explicitly engage in a function-by-function RFC analysis does not require remand where the "ALJ's analysis . . . affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence")).

with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted); *see also Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) ("The ALJ may discount subjective complaints of physical and mental health problems that are inconsistent with medical reports, daily activities, and other such evidence.") (citation omitted).

On appeal, this Court does not reweigh the evidence before the ALJ. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citation omitted). Additionally, the Court must "defer to the ALJ's determinations regarding" a claimant's subjective complaints, "so long as they are supported by good reasons and substantial evidence." *Id.* (citation omitted). Ultimately, determinations about a claimant's subjective complaints "are in the province of the ALJ," and a reviewing court "will not substitute its opinion for the ALJ's, who is in a better position to gauge [subjective complaints] and resolve conflicts in evidence." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (citations omitted).

As relevant to this appeal, Ms. Guetzloff argues she is unable to work due to several psychological symptoms. She claims that, despite medication, she is depressed, and accordingly does not want to get out of bed and frequently becomes angry and irritable. Tr. 17, 45. Ms. Guetzloff also reported "high stress," anxiety, occasional visual hallucinations, and a history of trauma. Tr. 20. Ms. Guetzloff also has been diagnosed with bipolar disorder, post-traumatic stress order, generalized anxiety disorder, major depressive disorder, and obsessive-compulsive disorder. Tr. 17, 20. At times, she struggles to leave the house. Tr. 17, 46. Ms. Guetzloff claims that she has between three to four bad days a week, or about fifteen to sixteen a month. Tr. 17, 45–46.

The ALJ discounted Ms. Guetzloff's subjective complaints because Ms. Guetzloff received a conservative course of treatment, she did not require hospitalizations after the alleged

onset date, and because the evidence of Ms. Guetzloff's daily activities did not support the severity of her claimed impairments. Tr. 21. Ms. Guetzloff specifically takes aim at the ALJ's evaluation of her daily activities.

First, the ALJ found Ms. Guetzloff's subjective complaints incompatible with the record because she originally stopped working because she had a baby, indicating that she "took on a number of tasks involved in caring for an infant, including feeding the infant, bathing the infant, changing the infant, doing laundry, cleaning, and entertaining the infant – these activities actually reflect she was likely performing work related functions on a full-time basis[.]" Tr. 21. While that may be true, that was in 1999. *Id.* It is unclear—because the ALJ did not explain— why Ms. Guetzloff's daily activities from more than 19 years before her alleged onset date would be relevant. *See Zinselmeier v. Kijakazi*, No. 4:20 CV 255, 2021 WL 3616763, at \*5 (E.D. Mo. Aug. 16, 2021) ("Because an ALJ must determine a claimant's abilities as they exist at the time of the hearing, she cannot rely on remote evidence to determine a claimant's abilities.") (citing *Frankl v. Shalala*, 47 F.3d 935, 939 (8th Cir. 1995)). The ALJ never discussed how Ms. Guetzloff's current relationship with her children—now all adults (Tr. 40)—reflect on her subjective complaints. Indeed, the record suggests that Ms. Guetzloff had to *stop* parenting and leave one of her children in the custody of her father because of other mental health concerns. Tr. 43. Accordingly, this portion of the ALJ's analysis is not supported by substantial evidence. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("[Substantial evidence] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

However, this error was harmless. An error is harmless when the claimant fails to "provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). While the ALJ inappropriately

7

Case 2:20-cv-04177-NKL    Document 27    Filed 11/05/21    Page 7 of 19

found that Ms. Guetzloff's pre-2018 daily activities conflicted with her current description of her symptoms, there is still substantial evidence supporting the ALJ's decision to discount Ms. Guetzloff's subjective complaints. *Buford v. Colvin*, 824 F.3d 793, 795 (8th Cir. 2016) (noting a court "will not reverse simply because some evidence supports a" different conclusion).

To begin, the ALJ found that the fact that Ms. Guetzloff was capable of planning and executing a move from Tennessee to Missouri contradicts her testimony regarding the severity of her symptoms. Tr. 21. Ms. Guetzloff counters that the record does not establish how she moved and whether she had help. Ms. Guetzloff did not enter evidence suggesting—and does not now concretely argue—that there was anything about the move that should displace the ALJ's finding. The record, as a whole, shows that Ms. Guetzloff was able to move to Missouri and establish a life once she arrived. Ms. Guetzloff obtained a Missouri phone number, made friends, and established a serious relationship with a romantic partner. Tr. 15, 21, 399, 457–58, 474, 482. Given the record, the Court cannot conclude that the ALJ erred in finding that the activities involved in moving from Tennessee to Missouri contradicted Ms. Guetzloff's subjective complaints, especially relating to her ability to interact with others and function socially. *Richardson*, 402 U.S. at 401 (holding that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."); *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("In reviewing a denial of social security benefits we are limited to assessing whether there is substantial evidence in the record as a whole to support the Secretary's decision.") (citation omitted).

The record also shows that Ms. Guetzloff took a trip to Tennessee alone to attend the graduation of one of her children. *See e.g.*, Tr. 40, 476. Ms. Guetzloff testified—and indicated to her therapist—that she enjoyed the time with her family and the graduation itself went well.

Tr. 476. True, Ms. Guetzloff testified that she experienced anxiety on the trip to Tennessee, but Ms. Guetzloff relied on coping skills she learned in therapy to manage her anxiety. Tr. 40–41. It is also true that Ms. Guetzloff had to be driven back to Missouri from Tennessee. However, While Ms. Guetzloff was in Tennessee, her abusive ex-husband passed away. Tr. 40–41. Both her treatment notes and Ms. Guetzloff's own testimony make clear that this provoked an emotional response and affected Ms. Guetzloff deeply. Tr. 40–41, 476, 508. That said, before her ex-husband's death, Ms. Guetzloff's medical records suggest that her "mood ha[d] been better." Tr. 508. Ms. Guetzloff also ran out of her psychiatric medication while on this trip. Tr. 508. Taken together, there is enough evidence to permit the ALJ to conclude that the level of functioning evinced by Ms. Guetzloff's trip to Tennessee contradicts her subjective complaints. *Richardson*, 402 U.S. at 401; *Bland*, 861 F.2d at 535.

The ALJ further discounted Ms. Guetzloff's subjective complaints given her lack of work history. An ALJ may properly discount a claimant's subjective complaints when, among other reasons, the record indicates lack of motivation to work as evidenced by sporadic work history or relatively low earnings. *See Bernard v. Colvin*, 774 F.3d 482, 489 (8th Cir.2014) (ALJ appropriately considered claimant's sporadic work history in discrediting his subjective complaints); *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir.2004) (ALJ properly considered claimant's sporadic work history and relatively low earnings record as evidence of potential lack of motivation to work). This is true when, like here, the limited work history occurs prior to a claimant's onset date. *See Mills v. Colvin*, No. 5:15-CV-06003, 2015 WL 5785691, at *6 (W.D. Mo. Oct. 2, 2015) (discounting claimant's subjective complaints when claimant had limited work history) (citations omitted).

9
Case 2:20-cv-04177-NKL   Document 27   Filed 11/05/21   Page 9 of 19

The ALJ also concluded after a "longitudinal review of the claimant's treatment history" that "she has received conservative treatment for her . . . mental health during the relevant period." Tr. 21. The ALJ also found that Ms. Guetzloff was on a relatively conservative course of treatment and lacked any recent hospitalizations and based on this she determined that Ms. Guetzloff's symptoms were less severe than she complained. *Gray v. Apfel*, 192 F.3d 799, 803–04 (8th Cir. 1999) (finding ALJ properly discredited claimant's subjective complaints of pain based on discrepancy between complaints and medical evidence, inconsistent statements, lack of pain medications, and extensive daily activities). The record also reflects that Ms. Guetzloff was responding well to treatment. *See e.g.*, Tr. 406 ("[Ms. Guetzloff] reports that her depression and anxiety [are] getting better. She reports [she has] been feeling better these days and has some motivation to do things. She reports that her mood is good today, but she at times continues to feel anxious. She reports that taking her medications helps with her anxiety and depression."); Tr. 408("[Ms. Guetzloff] reports that her worries [are] still there but taking her medications is helping."); Tr. 507 ("[Ms. Guetzloff] reports that taking her [medications] helps with her anxiety and depression."), Tr. 508 ("[Ms. Guetzloff] said the medication is helping when she takes it, but she ran out of her medication while in Tennessee."), Tr. 513 ("[Ms. Guetzloff] reports that taking her medications helps some."); *Guilliams*, 393 F.3d at 801 ("Evidence of effective medication resulting in relief, for example, may diminish the credibility of a claimant's complaints.")(citing *Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999)).

Given the additional evidence, the Court cannot conclude the ALJ committed reversible error in evaluating the severity or persistence of Ms. Guetzloff's subjective complaints. *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial

evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.") (citation omitted). While Ms. Guetzloff experienced serious psychological symptoms, symptoms alone do not automatically render a person disabled. *C.f. McGinnis v. Chater*, 74 F.3d 873, 874 (8th Cir. 1996) ("[T]he appropriate question [is] not whether [a claimant] suffers any pain but instead whether the pain [is] so disabling as to prevent her from performing any type of work."). There must be severe functional loss establishing an inability to engage in substantial gainful activity. *Buckner v. Astrue,* 646 F.3d 549, 557 (8th Cir. 2011).

Substantial evidence in the record as a whole supports the ALJ's decision to discount the severity of Ms. Guetzloff's symptoms. Ms. Guetzloff was able to plan and execute a move from Tennessee to Missouri, she was able to establish a life once she arrived, including a serious relationship with a romantic partner, she was able to travel to Tennessee and enjoy time with her family, and, perhaps more importantly, the record indicates that Ms. Guetzloff's symptoms were beginning to improve. Because any error in evaluating Ms. Guetzloff's subjective complaints was harmless, Ms. Guetzloff's appeal on this basis is DENIED.

### C. Whether the ALJ Erred in her Evaluation of the Medical Evidence

Ms. Guetzloff faults the ALJ for crediting the opinions of State Agency psychological consultant Dr. Robert Cottone and discounting the opinions of NP Vivian Kamara, who treated Ms. Guetzloff. Ms. Guetzloff does not challenge the legal framework the ALJ used to analyze the experts' opinions; instead, she seems to argue that substantial evidence does not support the ALJ's conclusion.

An ALJ's analysis of medical opinion evidence is governed by 20 C.F.R. § 404.1520c(a). For claims filed on or after March 27, 2017—like Ms. Guetzloff's—the agency will not defer or

11

give any specific evidentiary weight, including controlling weight, to any medical opinion. *See Id.* The 2017 amendments to the Commissioner's regulations remove the "perceived hierarchy of medical sources, deference to specific medical opinions, and [the practice of] assigning 'weight' to a medical opinion." *Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) (alteration omitted). That said, "the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'" *Id.* Under the new regulations, the agency will evaluate the persuasiveness of medical opinions considering five specific factors, the most important of which are the supportability and consistency of the opinion. 20 C.F.R. § 404.1520c(b)(2); *see also Morton v. Saul*, No. 2:19-CV-92, 2021 WL 307552, at *7 (E.D. Mo. Jan. 29, 2021).

The Commissioner's regulations explain that, under the supportability factor, "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be. 20 C.F.R. § 404.1520c(c)(1) (2017). In other words, an opinion is more persuasive if it presents more relevant objective medical evidence and explanatory rationale in support of the opinion." *Morton*, 2021 WL 307552, at *7. With respect to consistency, "the more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . .will be." 20 C.F.R. § 404.1520c(c)(2) (2017). "Stated more simply, an opinion is more persuasive if it is more consistent with the overall evidence as whole." *Morton*, 2021 WL 307552, at *7.

12
Case 2:20-cv-04177-NKL   Document 27   Filed 11/05/21   Page 12 of 19

1. **Dr. Robert Cottone**

In January 2015, State Agency medical consultant Dr. Robert Cottone, a mental health professional, reviewed Ms. Guetzloff's medical records and formed opinions regarding her mental impairments and their impact on her ability to do work. Tr. 74–82. Dr. Cottone did not treat or personally evaluate Ms. Guetzloff. From his review, Dr. Cottone determined that Ms. Guetzloff's psychological conditions caused mild to moderate limits to her functioning, including difficulty interacting with supervisors and co-workers, maintaining concentration for extended periods, and carrying out detailed instructions, but found her able to "understand, remember, and carry out short and simple instructions[,]" "adapt to most changes in the workplace[,]" and "make simple work-related decisions." Tr. 82.

The ALJ found Dr. Cottone's review persuasive, and specifically credited several of his opinions. Although she offered no detailed explanation, the ALJ generally found that each opinion was consistent with the evidence in the record and well supported by Dr. Cottone's narrative discussion. Tr. 22.

The ALJ first relied on Dr. Cottone's opinion that Ms. Guetzloff suffers from severe affective disorder, severe trauma or stressor related disorder and non-severe substance abuse disorder. Tr. 22. The ALJ further credited Dr. Cottone's opinion that Ms. Guetzloff has "mild limitation to understanding, remembering, or applying information, moderate limitation to interacting with others, moderate limitation to concentration, persistence or pace, and mild limitation to adapting or managing" and that Ms. Guetzloff "retained the ability to understand, remember, and carry out simple instructions; to adopt to most changes in the workplace; to make simple work related decisions[.]" Tr. 22.

Ms. Guetzloff appears to argue that Dr. Cottone's opinion was not supportable because: (1) Dr. Cottone never personally examined or treated Ms. Guetzloff, (2) he reached the opinion before Ms. Guetzloff began receiving psychiatric care and counseling—and therefore without the benefit of records from those visits, and (3) the opinion itself is contradicted by the evidence. As an initial matter, there is no per se rule preventing an ALJ from finding the opinion of a non-examining state agency consultant more persuasive than that of a treating healthcare provider. *See* 20 C.F.R. § 404.1520c(a); *Fatuma A. v. Saul*, No. 19-CV-3160, 2021 WL 616522, at *9 (D. Minn. Jan. 26, 2021), *report and recommendation adopted*, No. 19-CV-3160, 2021 WL 615414 (D. Minn. Feb. 17, 2021). Nor does a medical consultant's opinion need to be discarded simply because his opinion was reached without the benefit of a claimant's full medical record. *See McCoy v. Saul*, No. 4:19-CV-00704, 2020 WL 3412234, at *9 (W.D. Mo. June 22, 2020) (holding that ALJ did not err in finding medical consultant's opinion persuasive even though that opinion was reached before more than 300 pages of additional medical evidence had been adduced). "[A]n ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed." *Kuikka v. Berryhill*, No. 17-cv-374, 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018) (citation omitted). At bottom, the ALJ alone is responsible for calculating the RFC. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."). As such, an ALJ can rely on the "opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." *Kuikka*, 2018 WL 1342482, at *10.

Here, the ALJ clearly considered the medical evidence submitted after Dr. Cottone performed his analysis. *See* Tr. 20–21 (ALJ discussing treatment notes from Compass Health Network describing visits between February 2019 through July 2019). Indeed, the ALJ discusses various complaints made by Ms. Guetzloff during this period, as well as how her symptoms progressed and responded to treatment. *Id.* After discussing this evidence, the ALJ found that Ms. Guetzloff has a "moderate limitation to interacting with others and to concentration, persistence or pace" and explicitly adopted restrictions in her RFC to account for that limitation. *Id.* at 21. This discussion is enough to demonstrate the ALJ was aware of, and weighed, Ms. Guetzloff's additional medical evidence. *See generally Fatuma A.*, 2021 WL 616522 at *9 (holding the ALJ did not err when relying on the opinion of a state agency consultant who did not have access to the full record because the ALJ analyzed the record as a whole, including the additional records, when crafting the RFC).

The remainder of Ms. Guetzloff's arguments related to Dr. Cottone, such as that he misinterpreted the evidence of Ms. Guetzloff's daily activities and its impact on her level of impairment, invite the Court to reweigh the facts before the ALJ and come to a different conclusion. However, the Court may not do so. *Guilliams*, 393 F.3d at 801 ("We do not re-weigh the evidence presented to the ALJ[.]") (citation omitted). Both Dr. Cottone and the ALJ analyzed Ms. Guetzloff's medical records and drew conclusions regarding Ms. Guetzloff's ability to function in the workplace. Those conclusions are supported by substantial evidence. *See e.g.*, Tr. 390–92 (psychological evaluation from Dr. Ann Pollock). The Court's inquiry ends there. Ms. Guetzloff claims that the evidence of her daily activities considered by Dr. Cottone should "indicate significant impairment[,]" Doc. 18, at 26, but so long as the ALJ's conclusion is supported by substantial evidence, the Court cannot reweigh the facts. *Kirby v. Astrue*, 500 F.3d

705, 709 (8th Cir. 2007) ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians.") (citation omitted); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) ("Although these pieces of evidence, if accepted as credible, might have proved sufficient to support a finding of disability, we are not allowed to substitute our opinion for that of the ALJ, who enjoys a closer position to the testimony in support of an application) (citation omitted); *Michel*, 640 F. App'x at 592 (holding that the Court must "defer heavily to the findings and conclusions of the Social Security Administration") (quotation marks and citations omitted). As such, Ms. Guetzloff's appeal on this point is DENIED.

2. **Nurse Practitioner Vivian Kamara**

Ms. Guetzloff also faults the ALJ for discounting the medical opinion of Vivian Kamara, a nurse practitioner at Compass Health Network ("Compass"). NP Kamara began treating Ms. Guetzloff on April 4, 2019, and met with her three additional times, on April 18, 2019, June 13, 2019, and July 26, 2019. *See* Tr. 396–414, 504–510, 513–516. Ms. Guetzloff also saw a therapist, Kerry Earthsoul, at Compass beginning in March 2019. *See e.g.*, Tr. 483.

On July 19, 2019, NP Kamara completed a treating source statement, indicating that Ms. Guetzloff had Category III (10% limitation in an eight-hour workday) to Category IV (20% limitation in an eight-hour workday) limitations, including impairments to her ability to perform simple work activity, maintain concentration, attend work regularly, interact with others, respond to changes, and be aware of normal hazards. *See* Tr. 23–24; 427–430. NP Kamara further concluded that Ms. Guetzloff would miss two or more days of work each month due to her psychological limitations, and that even a minimal increase in mental demands or changes in environment would cause Plaintiff to decompensate. Tr. at 429. These findings were reported on a checkbox form, with only minimal narrative discussion. Where the opinions were

supported, NP Kamara pointed to her own mental status examinations, interactions with Ms. Guetzloff, and well as "diagnosis and assessment." Tr. at 427–430. The ALJ found these opinions to be unpersuasive, given they were "basically unsupported" and inconsistent with the medical evidence in the record. Tr. 24. Ms. Guetzloff argues that it was enough that NP Kamara based her conclusions on "[Ms. Guetzloff's] mental status exam and interaction with client. Based on diagnosis and assessment." Tr. 427–429.

To begin, it was permissible for the ALJ to discount NP Kamara's opinions. Ms. Guetzloff indirectly tries, several times, to suggest that NP Kamara's opinions are entitled to more weight than the opinions from other, non-treating medical professionals. *See* Doc. 18, 28–31 (Ms. Guetzloff's Brief in Support of Complaint). The Commissioner's new regulations directly foreclose her efforts.

While Ms. Guetzloff is correct that treating physicians can rely on their own experience working with a claimant, it does not follow that an ALJ must accept an unsupported and unexplained citation to a treating physician's experience, "diagnosis[,] and assessment." *See* Doc. 18 at 29; *see also* Tr. 427–29. Here, NP Kamara's blanket citation to her assessment of Ms. Guetzloff is even less reliable because it is not clear *which* assessments NP Kamara purports to rely on. The record suggests that NP Kamara herself only met with Ms. Guetzloff four times (April 4, 2019; April 18, 2019; June 13, 2019; and July 26, 2019). Tr. 485–520. Meanwhile, Ms. Guetzloff met with her therapist, also at Compass, more frequently.

And substantial evidence supports the ALJ's decision to find NP Kamara's opinions inconsistent with the record as a whole. As Ms. Guetzloff points out, she reported feelings of anxiety, irritability, low concentration, anger, and sadness; and explained that she felt these things "most of the time." *See* Tr. 409. She also disclosed her abusive relationship, nightmares,

17
Case 2:20-cv-04177-NKL   Document 27   Filed 11/05/21   Page 17 of 19

and flashbacks. Tr. 413. But, Ms. Guetzloff was attending regular therapy and was prescribed medication to manage these symptoms. *See e.g.*, Tr. 460–461, 467–80. And, according to the treatment notes, Ms. Guetzloff was responding well to that treatment. Tr. 406, 467–70, 474, 513 (medical records explaining improvements to nightmares, hallucinations, anxiety, social relationships, and social activity). While Ms. Guetzloff at times reported increased anxiety and depression, during therapy she was alert, pleasant, cooperative, and engaged. Tr. 402, 413, 509, 515.

While the record certainly shows that Ms. Guetzloff worked through difficult topics— including trauma from her past abusive relationships—in therapy, and that she was forced to confront challenging life events that occurred after the onset period, such as the death of her abuser, the record reflects that the tools provided by her therapist, as well as medication prescribed by NP Kamara, were generally helpful in controlling symptoms. *See* Tr. 41, 467–70, 474, 513. While Ms. Guetzloff did report instances of worsening symptoms, NP Kamara herself wrote that Ms. Guetzloff's "Depressed Anxious Affect" was "appropriate to content[,]" Tr. 515, and her therapist also regularly noted that Ms. Guetzloff had good hygiene, made good eye contact, and that her thought processes were linear and goal directed. Tr. 402, 413, 509–10, 515. Other providers made similar, mild findings. *See* Tr. 380, 392, 422, 438.

Just because the ALJ did not find NP Kamara's opinion related to the severity of Ms. Guetzloff's impairments persuasive does not mean that the ALJ rejected the pages of medical records stemming from Ms. Guetzloff's treatment at Compass, including by NP Kamara. Indeed, the ALJ's opinion clearly reflects a careful consideration of this evidence. However, the ALJ concluded—and substantial evidence supports the conclusion—that NP Kamara's opinions conflict with the underlying medical evidence. This evidence includes reports from other health

care providers who examined Ms. Guetzloff, such as Dr. Pollock, who reported "[Ms. Guetzloff's] attention and concentration abilities appeared intact. She can learn, understand, and recall information. She can manage finances independently." Tr. 392.[4] The Court will not re-weigh the facts presented to the ALJ nor disturb the conclusions drawn by the ALJ—even if the record would support a different one—so long as the ALJ's conclusion is supported by substantial evidence. *Guilliams*, 393 F.3d at 801; *Michel*, 640 F. App'x at 592. Accordingly, Ms. Guetzloff's appeal on this basis is DENIED.

## IV. CONCLUSION

Because the ALJ did not commit reversible error in the calculation of Ms. Guetzloff's RFC—either in her assessment of Ms. Guetzloff's subjective complaints or in her evaluation of the relevant medical evidence—and the ALJ's decision is supported by substantial evidence, the ALJ's decision is AFFIRMED

        s/ Nanette K. Laughrey
        NANETTE K. LAUGHREY
        United States District Judge

Dated: 11/5/2021
Jefferson City, Missouri

---

[4] Although the ALJ ultimately rejected Dr. Pollock's conclusion that Ms. Guetzloff is unable to work, Dr. Pollock's evaluation of Ms. Guetzloff is still relevant medical evidence.